Good morning. May it please the Court, my name is Paul Keenan. I represent the appellant, Mason Dixon Intermodal. I would like to reserve two minutes for rebuttal. Sure. This particular case arises from two large containers that the owner of which wanted to have transported from the Port of Oakland to Fremont, California. A broker was engaged to arrange for the transportation, and my client, Mason Dixon Intermodal, acted as the carrier in actually transporting the freight. You know, I wonder if we could fast forward. ITG settled. The judge rules the settlement is in good faith. Therefore, they can't go after IT. You can't go after ITG anymore. Why is that wrong? It's wrong because we have three parties in a triangle of claims. For the purposes of the Act, we look at the claims brought by the shipper against the broker and against the carrier. What is immediately obvious is that these claims are exclusive. The damages aren't even the same. The only party that can be sued for damage to freight under the Carmack Amendment is a carrier. Broker can't be sued. District Court already ruled that in the Summary Judgment Rule. Therefore, only the carrier can be liable for damage to the freight in transit. Broker cannot be liable for that by definition in the statute. The broker can only be liable for negligent selection of a carrier unless the broker also had a contract with the shipper, in which case it could be liable under that contract. The damages arising from these two separate claims are completely different, and they can't be recovered against the other party by federal law. What do you mean by completely different? Damage to freight in transit can only be recovered against a carrier by a mandated statute. Not against whom can it be recovered, but why are the damages different? What is the Carmack damages based on? The Carmack damages are based on the value of the freight being transported. And the reduction in damage, right, from whatever happened? Well, the broker is not liable for damage to freight in transit. I'm talking about the carrier now, the Carmack liability. Isn't that for the damage to the freight? Is that what they get under Carmack? Correct. It's akin to strict liability. Now, what is the broker liability based upon? Damages. Negligent selection of a carrier. How is this damage measured? The broker is not liable for any damage to freight in transit. The broker can only be liable, perhaps, for breaching a contract it had with the shipper. How is the damage measured? I'm not talking about the theory of liability. How is the damage against the broker measured? What is the measure of damage? If you have a breach of contract against a broker, you're before the jury, you say, well, members of the jury, I'm entitled to X dollars. Where do you get the X dollars? If it's contract, it's going to vary upon the terms of the contract, but this is tort. All right. So looking only under tort. What is it based on, the damages against the broker? It's a great question, Your Honor. In a tort case against a broker brought by the owner of freight, a broker is only liable for the negligent selection of a carrier. And frankly, I've been practicing the Interstate Commerce Act and Carmack Amendment cases for 30 years. I've never seen it. Isn't the damages proximately caused by that negligent act? No, it would have been the damages caused by the negligent selection of a carrier, for example, if you needed to. I know that. The damages proximately caused by that act, namely negligently selecting the carrier. Right. What I'm saying is the measure of damages in both are the same, aren't they? No, different damages completely. How can it be? I don't understand that. Well, these two containers were worth. All right. Tell me again, then, what is the measure of damages against the broker? How do you measure it? Whatever damages the. . . Well, what is that? Well, Your Honor, I'm trying to answer your question. In this case. . . In this case, frivolous. The damages exposure in this case would probably amount to the freight charges that the carrier paid. There are no damages? For the negligent selection of a carrier? I don't think it exists in this case. And if it did, it would be essentially the freight charges. What could MDII recover against ITG if the suit were to go forward? If. . . The cross-slave went forward. That's a different part of the triangle. Yeah. And if that were to proceed, then, yes, MDII would seek to recover all, everything, every expense it incurred as a result of being given the wrong dimensions of the freight. But ITG is only limited liability of $200,000. Not to Mason Dixon? Not to. . . Well, they settled with the shipper for $150,000, and according to California law, that's the end-of-year cross-claim against them for what could be substantially more than $200,000. That would be true if, under the exact wording of the statute, Mason Dixon was liable for the same tort. But Mason Dixon can't be liable for the same tort. Mason Dixon is liable under a federal statutory scheme of absolute liability under the Carmack Amendment. By definition, on its face, the statute can't apply. So what you're basically saying is that the cross-claims and so forth, these have to be adjudicated individually regardless of what the liability is among the various parties inter se, say. The claim between the defendants have to be litigated separately because they're completely different. The claims coming out of the shipper, in other words, the broker here had a frivolous claim, settled it, and tried to apply the California Joint Tort Fees Act to knock out its exposure from the carrier. But it can't do that. Because when you look at the two claims that are going against the — that the shipper is sending out, the shipper is sending out a negligent selection of carrier claim here, the tort claim, and a Carmack Amendment claim here, federal statutory scheme. They're not even the same — they're not the same damages. They're not the same claim. They're not the same tort. A question that my colleague asked you. If there's a negligent selection of a carrier by a broker, why would the damages be whatever the damages were caused by that carrier when he didn't do his contract properly? A negligent selection of carrier would be — would come into play if a shoddy carrier with a shoddy reputation and poor, untrained drivers was selected by a broker. And he hits a bridge or he didn't do the right thing, would the damages be limited to the freight that was paid? Yes. Why would that be? If you're negligent in selecting someone to do a task, is that person liable for whatever happened by reason of their carelessness in executing that task? You would have to go against the carrier for the damage to the freight because Congress has mandated you to do that without exception. Congress has completely preempted all state law and said you must go against the carrier for damage to freight. All state law is preempted. It doesn't mean you can't go against a broker for, you know, negligent selection of the carrier. Actually, it does. Actually, it does. And, in fact, in this very case — in this very case, Your Honor, the district court correctly and properly dismissed the Carmack claims against the broker. Of course, but didn't dismiss the state law claims. Correct, whatever that may be. I mean, the only negligence case, Your Honor, the only negligence case against a broker I've ever seen is for negligent selection of a carrier, and I, for the life of me, don't know what damages they recover other than the charges that they pay. As a result, most broker liability situations arise from the contract between the broker and the shipper. And in that contract, the parties have spelled out their obligations. But, again, that's not a tort. You know, the more I think about this, the more complicated it seems to get. But let me see if I can, you know, simplify it so that I understand what's happened. Your folks are driving a truck that winds up damaging the merchandise. The shipper's insurance company pays the shipper. Then the insurance company and the shipper go after everybody for indemnity or subrogation or something like that. ITG, one of the parties, settles with the insurance company and with the shipper, right? Correct. They pay $150,000. Judge says their exposure really was only a maximum of $200,000, so that $150,000 settlement was not unreasonable. It was fair. It complies with California law. I don't get where that's not the right result. Your argument seems to be that the Carmack Amendment supersedes all of that California analysis. Is that right? Correct. Well, Your Honor, the statute, first of all, requires that the claims have to arise from the same tort. Well, it's all the same. As a matter of federal law, my client can't be liable for any tort. But it's the same event. It's a statutory tort. Carmack Amendment creates a statutory tort. Your Honor, it could be a statutory contract action. It could be a statutory tort. If you actually look at all the law that has arisen in the Supreme Court decisions under the Carmack Amendment, it is neither. It is a statutory creation that preempts all state law. It could be a contract. It could be tort. It could be — but the Congress went in and said no state law. It preempts all state law and is liable. But the Carmack Amendment is silent as to, you know, as to, you know, application of a good-faith settlement. Here's another point, Your Honor, is that the broker can't be liable for Carmack either. So how could it be the same tort? Well, the problem — your argument, as I hear it and read through it, your argument really is with the Carmack Act, you know, which has ordained this for a reason that they wanted to have this regimen. And that's what was handed to us. And this is not to say that it's perfect or proper, but this is what you are — the cards you've been dealt. So once that — once ITG is settled, there's no more cause of action against them by a cross-claim or counterclaim. But, Your Honor, it's a completely different — it's not even the same tort. It's a completely different — you have to look at what the shipper is. The two claims coming out of the shipper have to be the same tort. And it can't possibly be by definition of federal law. Yeah, but this — No court has ever allowed this to occur in the United States of America, ever. But did the Carmack Amendment pull the rug out from any — this type of — your claim here? In other words, if there was no Carmack Amendment, this would be a horseman of a color. All bets would be off. Correct. But the Carmack, because it prevents the Carmack claim against the broker and says it can only be against the carrier — Right. — and has its own statutory scheme and cause of action, it can't possibly qualify as a state tort. And not only that, but how could — if it has to be the same tort, how could the carrier be liable for negligent selection of itself? That's why the claims are mutually exclusive. You keep saying it has to be the same tort. But there is a California case that applied that law to a negligent tort pleaser and to a strictly liable defendant. Right? That's Safeway Stores, which is Neskart. And that maybe is not clearly the same tort the way you're using it. Well, the actual language of the statute is a number of tort pleasers claim to be liable for the same tort. Right. But what I'm saying, you know, California Supreme Court supplied it to a negligent tort pleaser as well as to a strictly liable defendant. That may be true within the context of torts, but again, no carrier in the Interstate Commerce Act can be liable for any tort under state law. Or breach of contract for state law. Well, unless you classify the CARMAC violation itself as a tort. Well, if we agree with you, aren't we undermining the very reason for the CARMAC amendment? I'm sorry? If we agree with you, isn't it contrary to the theory of what CARMAC was trying to prevent? No. CARMAC imposes a system that actually favors the owner of the freight and allows the owner of the freight to simply file one action against any carrier. Yeah. You don't have to prove which carrier caused the loss. Yeah. And all you have to do is prove good in, bad out, and damages. Right. It's a whole statutory scheme that's very simplified and favors the shipper. Okay. So wouldn't your cause of action in some way impact upon the CARMAC amendment's theory of adjusting these claims? Which? With the shipper and the broker and the carrier. Carrier. If you're referring to the claim by the carrier against the broker, that claim is not itself in the Act. It is a claim that was basically left to fall on its own governed by State law. But don't forget, for this analysis, you have to look at the claims that the shipper has brought, the plaintiff. What are the claims that the plaintiff brought against the two defendants? I know you wanted to reserve some time. You've got about 30 seconds left. Thank you. Thank you. Joe Ryan for ITG. Sure. Good morning. Let me do this as a first step, a very big, big, big picture, and that's simply to ask whether we are to conclude that between the courts and the legislatures have created a situation where two defendants have obligations equitably imposed to indemnify or contribute to an injured party's damage. So are we to believe that we've created a situation where such an obligation exists, but if one of the injured parties chooses to settle, if one of the liable parties chooses to settle with the injured party, cannot insulate itself from that equitable contribution? And I think the answer clearly has to be no, because otherwise the public policy that's better recognized than any I can think of, encouraging settlement, is completely frustrated. And the question that we're left with is, okay, if we are going to say that there is a cause of action for equitable indemnity and we have this partial settlement situation, how do we protect the non-settling defendant? And then we're down to two choices, pro tanto, California's approach, or the proportionate share approach, which the federal courts have adopted in many situations. It seems to me that what ITG, that what Mason Dixon is arguing, is that these approaches, be it proportionate share or pro tanto, don't apply because their liability is not founded on the same sorts of legal theories as is the liability of ITG. Well, I think he's also claiming it's not even the same damages. Well, yes, I heard that, but, you know, if we tell them, here this thing is perfectly fine to carry along with the size of flatbed you have and we're wrong about that and for some reason they're not able to see that the thing is much higher than a normal container, we would be liable for the damage to that cargo. I don't think the claim against us was frivolous. I think it had some problems, particularly given that Mason Dixon has an opportunity to see this. Could the damages be different? I mean, their liability is limited to the damage to the merchandise. Your liability could theoretically include that plus lost profits plus, you know, whatever else you can dream up. Exactly. Yeah, so the damages do not overlap entirely, but they do overlap in part. There are some common elements of damages, namely in this instance about $800,000. I really take issue with the assertion that CARMAC is not tort liability, and in their reply they cite back to a case decided in 1913, in January of 1913. The amendment is a 1906 amendment, Supreme Court case, so it found its way through the system pretty rapidly, and that is the Adams Express versus Croninger. And one of the issues that the Supreme Court addressed was, is this a strict liability without regard to fault? And their comment is that this was the intent of Congress, is not conceivable to give such emphasis to the words any loss or damage, would be to ignore the qualifying words caused by it. The liability thus imposed is limited to any loss, injury, or damage caused by it for a succeeding carrier to whom the property may be delivered, and plainly implies a liability for some default in its common law duty as a common carrier. In our brief, I cited from another Supreme Court case, Missouri Pacific, that said accordingly under federal law, the shipper establishes prima facie case when he shows delivery in good condition, arrival in damaged condition, and the amount of damages. Thereupon, the burden of proof is upon the carrier, Mason Dixon, to show both that it was free from negligence, and that the damage to the cargo was due to one of the accepted causes, relieving the carrier of liability. So in that sense, really what CARMAC does is it creates a rebuttable presumption of negligence, established by showing the prima facie case, I gave it to you in good condition, it got delivered in bad condition. So CARMAC is really, you know, a codification of tort liability. That Adams case that they cite gives the history and points out that your shipper in New York, a carrier in New York, you bargain for a liability limitation, maybe as to the types of damages, which CARMAC enacted, or as to the amount, and you do it according to the rules then extant in New York that make that limitation viable or not. As soon as it crosses the Jersey line, you're out of luck. So the real vice that CARMAC was addressing was largely had to do with the disparity in rules having to do with the types of damages recovered. I mean, Hadley versus Baxendale was in some senses this sort of thing. The types of damages recovered or your ability to limit the amounts of the damages. That's what CARMAC addressed. And then it also said you're going to be vicariously liable for your sub-haulers and here is how you go about limiting your damages. Such clauses are valid. So CARMAC is really a tort theory, and California has a case cited by Judge Walker, Will Dan, which explained that the statute, California's 877 and 877.6, are to be the discussion of tortfeasors, one or more tortfeasors, is not to be limited to, quote, joint tortfeasors in the classic sense. I have the Will Dan quote here, but I'm not sure I can find it quickly enough in the time I have. What we are looking at is whether multiple people may be responsible for one indivisible injury. And certainly here the damage to the cargo was indivisible, though there were two different shipments 24 hours apart that got run into the same overpass. There is no case, though, is there, right on point, that allows for a contribution in this kind of situation where you have a CARMAC liability and, say, a state tort, right? No, there isn't, and if that's so, then the court reached the right conclusion for the wrong reason in dismissing their contribution action. To me, the logic of the situation says that Congress did not intend by making uniform the laws with respect to the duties of a common carrier and the ability of a common carrier to limit its liability. It addressed those issues. It did not seemingly purport to do away with the potential for some other person involved in it. How about the person who runs into the trucker that's carrying this cargo? Certainly two people can be responsible for a two-car, a car-truck collision, so you have a carrier that cannot absolve itself of responsibility because it's been negligent, but clearly another party has contributed to that same cargo loss. Are we to believe that Congress intended to do away with the joint liability and all that goes with that in terms of equitable indemnity one to the other, the plaintiff's ability to recover all from either in most states when it comes to economic loss? Are we to believe that Congress intended to do away with all that? I certainly didn't, and I certainly don't think that I advised a client to pay $150,000 to settle a frivolous or non-meritorious claim. If there are any questions on the amount of the settlement and whether reasonable, I'm happy to address those. So your client was brought in under diversity of jurisdiction? Yeah. So then right off the bat it would seem like state law would apply. Correct. And the role of ITG in this is as follows. Lapmaster contacts West Transportation Services. They're a freight forwarder. They are subject to CARMAC. West needs a carrier. West comes to ITG a broker not subject to CARMAC. When the loads finally arrive, a West employee calls an ITG employee who happens to be in Illinois and says we need these, we need, here's a dispatch order. The woman working for ITG picks it up, and there's a blank where there should be some information filled in, namely the size of the cargo. Typical lingo is it's engaged, meaning it's container size. She calls the West person, asks is this engaged. He says yes. She then issues the dispatch order to Mason Dixon with the form properly filled out saying it's engaged. Mason Dixon then dispatches two drivers with two of these standard chassis. These flat racks, which have posts on them, have this cargo that's sticking up well beyond the posts. The drivers for Mason Dixon apparently are oblivious to the implications of the fact that these aren't engaged as demonstrated visually to them by the fact that they extend beyond the posts, and one of them takes off down the road. First overpass is 29th Street. Bang, he runs into it. The other guy's had brake troubles. He goes over to the yard, waits 24 hours, and then he goes down 880 and runs into the 29th Street overpass. So ITG's fault in this is for believing what West told them over the phone, and the only way they would have for verifying that is sending somebody from Illinois out to California. So I would contest ITG's liability, but, you know, there's a substantial amount of damage and there's going to be a lot of expense involved in the trial, and all the things that motivate people to settle claims motivated us to settle the claim. Judge Cohen or Judge Dunlop, if the cross-claim went forward against ITG, how much could they collect from ITG? I think that there could be two answers to that, three answers to that question. One answer would be that if they are entitled to equitable contribution, but that ITG is not able to insulate itself from that by reason of having made a settlement with the plaintiffs, then they would be able to collect ITG's share of the damages. Now, if they, to the, well, I'm sorry, let me phrase that over again. What Mason-Dixon would be able to collect is the amount by which what they paid exceeded what they caused, and that would be one limit on what they could collect, and the other limit on what they could collect is the amount by which the sum paid by ITG was less than the amount of damage that ITG caused. In other words, if I've underpaid and they've overpaid, they get. Well, they have a cross-claim, no, they have a counterclaim against ITG. I think it's a third-party claim, but it's an action for indemnity. An action for indemnity and contribution. And contribution. So they're not just looking for indemnity. They're saying you're a joint court teaser. Yes, and so the other answers to this are that if, as they say, we're liable under completely different schemes and this whole concept of contribution doesn't apply, including the effects of settlement, I'm going to be arguing that they can't state a cause of action for contribution or indemnity. Why not? They're saying that you're under the contribution aspect of the claim. Leave the third-party indemnity aside for a second. They're saying that in this whole scheme of things, you know, they ran into two—they're negligent. And if they are, you are also negligent and that you shouldn't be liable for up to $200,000. You should be on the hook for whatever jury says you're—it's a fair—if you're a— do they have comparative negligence here in California? Yes. Okay. They'll say the jury then should assess everyone's contribution to this ball of wax and your contribution may be more than $150,000, may be more than $200,000, which you have capped your liability. To them, it might be more. Maybe not to anyone else, but to them. And what's wrong with that thinking? There's nothing wrong with that thinking if we recognize that right of contribution. But part and parcel of recognizing that right of contribution in California is recognizing my ability to avoid that liability if I have settled in good faith. Yeah, but that aspect of a joint tort procedure being able to settle and with the injured party and then no longer be subject contribution would go— if the theory of recovery was the same of the two tort cases, but the theory of liability against ITG and MD are not. Mason Dixon's liability is under CARBAC, and your liability to them is under tort. So they argue that you're talking apples and oranges here. This is not the usual situation where two people are involved in a car accident, they settle with the injured party, and one person is no longer liable to the injured party. These are two separate theories because of CARBAC. Mason Dixon is not liable in tort. They're liable in—you may call it a tort statute, but it's a—well, you called it a liability statute. I did not. Someone did. He did, which he wouldn't—a position he did not take at the trial court. Whatever it is, the theory is that this joint tort visa settlement situation doesn't fly here. It's not joint tort visa. It's something beyond that. Yeah. I go back to my original statement, which is are we really going to accept the proposition that we're going to recognize a situation where two defendants have an obligation arising out of equity to contribute towards or indemnify each other for an injury to a third party, but preclude them from being able to settle with that third party and at the same time absolve themselves of that responsibility? Thank you. Mr. Ryan, thank you. Keenum, I think you've got a little time left. Thank you, Your Honor. With all due respect, there are two parts to this, and the first part is an if and the second part is a then. If the same tort gives rise to the two claims against the two defendants, then the claim brought by one defendant against the other is dismissed. Just one moment on the then part, the claim by the carrier against the broker. It's for negligence. It's not for joint tort visa. It's not for contribution. It's for negligence, and the negligence is the standard that brokers have to follow when dealing with carriers and giving them the correct dimensions of freight. It's a duty, common law, negligence, standards in the industry of a broker dealing with a carrier. The second point I need to address, the tort claims against the carrier were dismissed here, so we have a situation where uniformity is at issue. Your Honor respectfully said that isn't CARMAC really like a tort. Actually, I always thought it was really more like a contract because most claims are between a shipper and a carrier that have an agreement, but that doesn't matter because CARMAC is neither, and there are court decisions that say this. CARMAC is its own statutorily created cause of action, neither contract nor tort, and the last point I wanted to make is I would ask this Court to be very careful because if the Court does not vacate and remand, the Court will have destroyed 103 years of uniformity in Federal law because now carriers are subject to the Joint Tort Fees Act of California, Illinois, 48 other states. It's going to vary state by state, and the whole uniform scheme that Congress intended will be destroyed. Thank you. Thank you very much, both gentlemen. The case is just argued or submitted. We'll stand at recess for today.
judges: Cowen, Tashima, Silverman